# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy W. Bjorhus,            :
          Appellant     :
                       :
       v.                 :    No. 977 C.D. 2020
                       :    Argued: June 7, 2021
Aston Township           :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE J. ANDREW CROMPTON, Judge (P.)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**         **FILED: August 3, 2021**

Appellant Stacy W. Bjorhus (Appellant) appeals from an order of the Court of Common Pleas of Delaware County (trial court), dated June 22, 2020, denying her motion for post-trial relief (Post-Trial Motion). Appellant challenges not only the trial court's June 22, 2020 order, denying her Post-Trial Motion, but also the trial court's underlying orders, dated February 11, 2020, finding in favor of Appellee Aston Township (Township) and against Appellant following a non-jury trial in connection with Appellant's claims that the Township violated the Whistleblower Law (Law),[1] and dated January 31, 2020, admitting Exhibit D-4 into the evidentiary record. For the reasons set forth below, we affirm.

---

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

## I. BACKGROUND

On March 2, 2016, Appellant initiated this action against the Township by filing a writ of summons with the trial court. (Original Record (O.R.), Item No. 1.) Subsequent thereto, on May 12, 2016, Appellant filed an amended complaint, setting forth a cause of action against the Township for a violation of the Law. (O.R., Item No. 8.) In her amended complaint, Appellant alleged that, during her employment with the Township, she made numerous good faith reports of wrongdoing and/or waste committed by the Township, which included: (1) the failure of Payroll Professionals, Inc. (Payroll Professionals), the Township's outsourced payroll processing company, to accurately remit the Township's federal payroll withholdings to the Internal Revenue Service (IRS) from 2005 to 2009 and the Township's refusal/failure to investigate the same; (2) the Township's improper management of its escrow account; (3) errors committed by the Township's tax collector in the preparation of the Township's property tax reports; and (4) the Township's fire marshal's failure to perform inspections of commercial properties located within the Township. (O.R., Item No. 8, ¶¶ 16-34.) Appellant further alleged that, in retaliation for her multiple reports of wrongdoing and/or waste, the Township terminated her employment in direct violation of the Law. (O.R., Item No. 8, ¶¶ 37, 40.) The Township filed an answer to Appellant's amended complaint, denying the allegations of waste and/or wrongdoing and asserting that the Township terminated Appellant, an at-will employee, for a legitimate, non-retaliatory business reason—*i.e.*, Appellant had difficulty working with Township staff and outside agencies and exercised flawed judgment, thereby leading the Township to believe that Appellant did not possess the requisite abilities to perform the essential functions of her job as finance director. (O.R., Item No. 14, ¶¶ 2, 15-34, 37, 40.)

2

Following a period of discovery and the trial court's denial of a motion for summary judgment filed by the Township, Appellant filed, *inter alia*, a motion in limine (Motion in Limine), seeking to preclude the Township from introducing into evidence the August 3, 2015 audit report prepared by Leitzell & Economidis, P.C. (Leitzell & Economidis) and any evidence or testimony related thereto. (Reproduced Record (R.R.) at 9a-12a.) The Leitzell & Economidis audit report was prepared in connection with Leitzell & Economidis's audit of the Township's financial statements for year ending December 31, 2014, and, *inter alia*, identified issues in the Township's financial department that involved Appellant. (*See id.* at 386a-95a, 724a-26a.) In support of her Motion in Limine, Appellant contended that she would be severely prejudiced by the Township's introduction of the Leitzell & Economidis audit report as a means to support her termination, because, as a result of the Township's objections to her subpoena on the basis of accountant-client privilege, she was not permitted to discover the underlying documentation utilized by Leitzell & Economidis in the creation of the audit report and, therefore, she could not attack the audit report's veracity and applicability to her termination. (*Id.* at 10a-11a.) Appellant further contended that the Township should not be permitted to introduce the Leitzell & Economidis audit report into evidence because it constituted inadmissible hearsay. (*Id.* at 11a-12a.) By order dated September 9, 2019, the Honorable Barry C. Dozor denied Appellant's Motion in Limine. (O.R., Item No. 29.)

The trial court conducted a non-jury trial on September 9 and 10, 2019. At that time, Appellant testified on her own behalf in support of her claim that the Township had violated the Law. In opposition thereto, the Township offered the testimony of Township Commissioner Michael Higgins (Commissioner Higgins);

3

Cindy Leitzell (Leitzell), a certified public accountant who serves as the Township's auditor and who prepared the Leitzell & Economidis audit report; Township Commissioner James Stigale (Commissioner Stigale); Maureen Schmidt (Schmidt), the Township's finance manager; Township Commissioner Carol Graham (Commissioner Graham); and Mary Elizabeth Naughton-Beck, Esquire (Solicitor Naughton-Beck), the Township's solicitor. The parties also agreed to submit the transcript from the deposition of John Granger (Granger), the Township's manager, into evidence in lieu of his live testimony. At the conclusion of the non-jury trial, the trial court directed the parties to file proposed findings of fact and conclusions of law, as well as letter briefs addressing the admissibility of, *inter alia*, Exhibit D-4, a memorandum prepared by former Township Commissioner James McGinn (Commissioner McGinn), who was deceased by the time of the non-jury trial. The memorandum, which is dated March 16, 2015, and addressed to the other Commissioners, requests that the Commissioners take disciplinary action against Appellant for her failure to perform to the expected standards of a manager and her difficulty working with others. (*See* R.R. at 730a.) On January 31, 2020, the trial court entered an order admitting Exhibit D-4 into the record. (*Id.* at 790a.) Thereafter, on February 11, 2020, the trial court entered an order finding in favor of the Township and against Appellant. (*Id.* at 842a.) In support thereof, the trial court issued the following relevant findings of fact and conclusions of law:

12. This [c]ourt finds that [Appellant] . . . has failed to establish an instance of wrongdoing or waste by a public body.

. . . .

14. [Appellant] failed to establish any wrongdoing and/or waste regarding her allegations concerning Payroll Professionals . . . . The testimony established that the Township retained an outside accounting firm and independent counsel to analyze and collect all trust taxes, penalties[,] and interest not paid by Payroll

4

Professionals . . . to the [IRS]. The record fails to contain any evidence that any tax years were not investigated by the Township and remained outstanding and not demanded in reimbursement.

15. [Appellant's] alleged wrongdoing and/or waste regarding taxes collected by the Township was discredited by the testimony of . . . Granger.

16. [Appellant's] allegations about wrongdoing and/or waste regarding fire inspection fees was [sic] not established in the record and was [sic] discredited by [Commissioner] Graham.

17. [Appellant's] allegations concerning wrongdoing and[/]or waste regarding the escrow funds failed to establish any specific violation of a statute or other [o]rdinance.

18. This [c]ourt finds that [Appellant] failed to establish by a preponderance of the evidence any wrongdoing or waste by [the] Township.

19. This [c]ourt further notes that the Township's termination of [Appellant] on September 10, 2015[,] was supported by the record. The position of [f]inance [d]irector was an at-will position with the Township and not covered by the [n]on-[u]niform personnel policy.

(*Id.* at 846a-47a.)

Subsequent thereto, on February 21, 2020, Appellant filed her Post-Trial Motion, seeking a judgment notwithstanding the verdict or, in the alternative, a new trial. (*Id.* at 848a-63a.) By order dated June 22, 2020, the trial court denied Appellant's Post-Trial Motion. (*Id.* at 928a.) Appellant then appealed to this Court,[2] and the trial court directed Appellant to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b). In its Rule 1925(a) Opinion, the trial court concluded, *inter alia*, that: (1) the trial court properly denied Appellant's Motion in Limine and admitted the Leitzell &

---

[2] Appellant initially filed her appeal with the Pennsylvania Superior Court. By order dated September 1, 2020, the Superior Court transferred the matter to this Court as this Court has exclusive jurisdiction over the matter pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa. C.S. § 762(a)(4).

Economidis audit report into the evidentiary record; (2) the trial court properly admitted Exhibit D-4 into the evidentiary record; (3) Appellant failed to establish any wrongdoing and/or waste regarding the complaints that she alleged to have submitted to the Township; and (4) even if Appellant had established that she made a good faith report of wrongdoing and/or waste, the Township established that it terminated Appellant's employment for separate and legitimate reasons that were not merely pretextual. The trial court reasoned:

> [Judge] Dozor . . . conducted argument on [Appellant's] Motion[] in Limine at the time [the] non-jury trial commenced. Judge Dozor . . . denied [Appellant's] request to preclude from evidence the . . . Leitzell & Economidis . . . [audit report].
>
> [Appellant] sought to bar the audit report because [the Township] objected to a subpoena issued to Leitzell & Economidis . . . pursuant to [Pennsylvania Rule of Civil Procedure] No. 4009.21[,][3] requesting production of all underlying documents consulted in preparing the report, all drafts of the report, other audits they have conducted, and all communications with [the Township. Appellant] also submitted that the audit report was inadmissible hearsay. [The Township] responded that it asserted proper privilege in its objections pursuant to [S]ection [11.1] of the CPA Law, [Act of May 26, 1947, P.L. 318, *as amended*, added by the Act of September 2, 1961, P.L. 1165,] 63 P.S. § 9.11a,[4] and that [Appellant] failed to seek [c]ourt review of the objection as established in [Pennsylvania Rule of Civil Procedure] No. 4009.21(d)(1).[5] [The Township] also countered that the audit

---

[3] Pennsylvania Rule of Civil Procedure No. 4009.21(c) provides: "Any party may object to [a] subpoena [served on a person not a party to the action] by filing of record written objections and serving a copy of the objections upon every other party to the action."

[4] Section 11.1 of the CPA Law provides, in pertinent part:

> Except by permission of the client engaging him . . . , a licensee . . . shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed unless the sharing of confidential information is within the peer review process.

[5] Pennsylvania Rule of Civil Procedure No. 4009.21(d)(1) provides: "If objections are received by the party intending to serve the subpoena prior to its service, the subpoena shall not be served. The court upon motion shall rule upon the objections and enter an appropriate order."

6

report is a public record of [the] Township and its author, . . . Leitzell, would testify at trial. This [c]ourt can discern no error in the [o]rder by Judge Dozor and notes that [Pennsylvania Rule of Evidence] 803(6) would further authorize the admission of the audit report.

Commissioner . . . Higgins testified at trial that . . . Exhibit D-4 was prepared by Commissioner McGinn and discussed at executive session and signed by all [the] Commissioners present to show approval for the memorandum. Commissioner . . . Stigale was also present at the meeting and recalled the executive session and the action taken therein. Commissioner McGinn died prior to this non-jury [trial]. [The Township] submitted that [Exhibit] D-4 was admissible pursuant to [Section 6104 of the Judicial Code,] 42 Pa. C.S.[] § 6104[,] as an official record and that [Pennsylvania Rule of Evidence] 803.1(3) authorized the admission of a memorandum that the declarant-witness testifies accurately reflects his knowledge at the time when made or adopted. [Appellant] countered that the memorandum was hearsay being used to prove the content contained therein.

. . . [T]his [c]ourt's review of [Exhibit] D-4 established a document verified by three witnesses at trial at its time of creation, adoption and approval. Commissioner Higgins testified that the document was given to [Granger] and was to be placed into [Appellant's] employee file. [Exhibit D-4] was not used by this [c]ourt to establish the accuracy of it[s] content but used to assist the [c]ourt in weighing conflicting testimony as to notice and review of certain conduct.

[Appellant's] remaining complaints allege error by this [c]ourt in applying the evidence found credible to the standards established in the [Law]. During the two-day non-jury [trial], this [c]ourt had the opportunity to weigh the credibility of seven . . . witnesses and examine fifteen . . . exhibits entered by the parties. This [c]ourt subsequently had the opportunity to review the transcripts, proposed finding[s] of fact and conclusions of law submitted by able counsel for both parties and to review four . . . deposition[] transcripts contained in the record.

The parties presented distinct and contrasting depictions of [Appellant's] capabilities and employment as [f]inance [d]irector with [the] Township between January 6, 2014[,] through September 10, 2015. The initial dispute between the parties involved the discovery and failure of Payroll Professionals . . . to properly remit payroll taxes on behalf of . . . Township employees to the [IRS]. Payroll Professionals . . . commenced its efforts on behalf of [the] Township in 2005. . . . Granger[,] in early 2014, instructed [Appellant] to contact

7

[a cell tower owner] concerning delinquent rents and taxes due [the Township] for cell tower property . . . .  Upon contact, [the cell tower owner] immediately informed [Appellant,] who promptly informed [Granger,] that the IRS had attached [the cell tower owner's] rent obligations because Payroll Professionals . . . had failed to remit payroll tax[] payments to the IRS on behalf of [the] Township.  It is undisputed that [Granger] immediately informed the [Township's Board of] Commissioners [(Commissioners)] of this fiduciary breach and that the Commissioners promptly contacted [the Township's] solicitor and auditor for review.  Ultimately, the Township engaged independent counsel and [a] financial auditor to file a [c]omplaint against Payroll Professionals.  Independent counsel successfully collected the amounts demanded from Payroll Professionals . . . .

[Appellant] at trial attempted to establish that she discovered the misconduct of Payroll Professionals . . . and that [the] Township ignored her request to investigate the payment of all payroll taxes from the inception of Payroll Professionals['] . . . contract in 2005 through its termination in 2014.  [Appellant] testified that she examined the records for 2009 and noted a discrepancy and then researched 2008 and found the same discrepancy[.]  [Appellant] testified that . . . Schmidt also discovered these discrepancies.  [Appellant] continued that she reported this conduct to [Granger] but that he responded that 2008 should not have been reviewed and to cease her review on past payroll records.  The deposition transcript of [Granger] failed to address or confirm any instruction he allegedly made to [Appellant] to cease her review work but confirmed that statements had been made to the IRS about how far to go back.  [Appellant's] testimony was also contradicted by . . . Schmidt[,] who testified that she pulled payroll records back to 1998 in support of the investigation of Payroll Professionals . . . and provided copies to [Appellant].  . . . Schmidt further stated that [Appellant] never expressed to her that she believed that there was any type of illegality by the tax collector.  The attachment letter sent by the IRS to [the cell tower owner] dated November 26, 2012[,] . . . indicates that the attachment was for the tax period end[ing December 31, 2009].

[Appellant] also testified as to her complaints to [Granger] regarding[:] 1) improper withdrawals from Township escrow accounts made without valid resolution of the Commissioners, 2) alleged inaccuracy in the collection/tabulation of real estate tax payments to [the] Township, and 3) the failure to verify Township [f]ire [m]arshall [sic] inspections and related fees.

. . . .

8

The record in this proceeding established that [the] Township properly remitted all of [the] employee payroll taxes to Payroll Professionals . . . . The record further establishes that Payroll Professionals . . . breached its contractual and fiduciary duty to the Township. At the instruction of [Granger], [Appellant] learned from . . . [the cell tower owner] that its rental payments had been attached by the IRS because of payroll remittance violations by Payroll Professionals . . . . [Appellant] embellished at trial her actual discovery and investigation of the payroll tax discrepancy. The Township had never directly received any notices of missing payroll tax payments from the IRS because Payroll Professionals . . . possessed a power of attorney for the tax account. The attachment by the IRS was for the 2009 tax year. The record lacks any specific confirmation or evidence supporting [Appellant's] beliefs of misappropriations prior to 2009.

[Appellant] testified that when presented [with] her termination notice, [Granger] informed her that she had a great [w]histleblower case and presented her with a paper containing the name of an attorney to contact. [Appellant] denied ever receiving counseling for her communication issues with other employees. [Appellant] on cross-examination stated that she had lost her written objections to the Leitzell & Economidis . . . audit and a thumb drive of important papers she compiled prior to [her] discharge at the instruction of [Granger]. [Granger,] found credible by this [c]ourt[,] stated that he had counseled [Appellant] and that several employees complained about how [Appellant] spoke to them. [Granger] further denied that he advised [Appellant] that she had a great [w]histleblower case or presented her with an attorney referral.

Regarding the tax collector accounting issues, [Granger] testified that there "were some mathematical errors, pennies were involved. I believe there were missed postings to various items that were corrected in subsequent months. I don't think there were any substantial areas that I was overly concerned about." In regard to escrow discrepancies, [Granger] testified that he could not recall funds being released without [the Commissioners'] approval. Commissioner . . . Graham testified that she never had a meeting with [Granger] and [Appellant] concerning fire marshal inspections or fees. Commissioner Graham added that the . . . Township [f]ire [c]ommittee only served as a liaison for the volunteers. The billing and collection of inspection fees would be for the . . . Township [f]inance [c]ommittee and [Granger].

Examining the record in its entirety, [Appellant] failed to specify how the [Township] was guilty of wrongdoing or waste. Any purported

9

allegations were vague and/or never communicated in any detail as alleged at trial. The fiduciary breach by Payroll Professionals . . . was noticed by [Appellant] at the instruction of [Granger] who directed [Appellant] to investigate cell tower rents and taxes due [the] Township. The IRS tax record from [the cell tower owner] identified the breach of conduct by Payroll Professionals . . . regarding . . . employer payroll taxes for the period ending [December 31, 2009]. The Township conducted an exhaustive investigation, retained independent counsel and [an] auditor[,] and obtained proper recovery through litigation. [Appellant's] citation to *Greenberg v. United States*, 46 F.3d 239 (3d Cir. 1994)[,] for establishing wrongdoing or waste by [the] Township for lack of investigation or collection of Payroll Professionals['] . . . misconduct is not supported by the record hererin [sic]. [The] Township did not "willfully" fail to collect, account[,] or pay over withheld taxes pursuant to [Section 6672(a) of the Internal Revenue Code (IRC),] 26 [U.S.C.] § 6672(a).

Based on the record presented and the credibility findings, this [c]ourt determined that [Appellant] failed to "establish" any wrongdoing by [the] Township regarding complaints she alleged to have submitted to [Granger] and/or [the] Commissioners. This [c]ourt did not require [Appellant] to "prove" wrongdoing or waste. This [c]ourt did not find any wrongdoing as defined in the . . . Law by [the] Township regarding Payroll Professionals . . . . This [c]ourt discredited [Appellant's] discernment regarding [f]ire [m]arshall [sic] inspection/fees, escrow withdrawls [sic] and tax payment reconciliations. Complaints[,] if made by [Appellant,] lacked specificity and were exaggerated and embellished at trial. The . . . Law is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees.

This [c]ourt concluded in the alternative that [the] Township established by [a] preponderance of the evidence that it fired [Appellant] for separate and legitimate reasons[,] which were not merely pretextual. The testimony of Commissioners Higgins and Stigale along with [Granger] and . . . Schmidt established that [Appellant] was aware of complaints concerning her behavior regarding her ability to work with and supervise other employees. The record further supported that [Appellant] received notice of these complaints. The testimony of the Commissioners, the testimony of . . . Leitzell . . . and the audit report, [and] the testimony of [Granger] and [Schmidt] establish valid cause for termination for communication and performance issues as detailed in the September 10, 2015 . . . termination notice.

10

(Trial Ct. Op. at 5-12 (citations omitted).)

## II.  ARGUMENTS ON APPEAL

On appeal to this Court,[6] Appellant argues that the trial court erred by admitting the Leitzell & Economidis audit report and Exhibit D-4 into the record because they constitute hearsay and do not fall within a recognized exception to the hearsay rule.  Appellant also argues that the trial court erred by finding in favor of the Township and by denying her Post-Trial Motion because:  (1) she presented ample evidence to establish that she made numerous good faith reports of wrongdoing and/or waste under the Law; and (2) the Township failed to demonstrate that it terminated her employment for legitimate, non-pretextual reasons.

## III.  DISCUSSION

### A.  Admissibility of the Leitzell & Economidis Audit Report and Exhibit D-4

Appellant argues that the trial court improperly admitted into evidence the Leitzell & Economidis audit report and Exhibit D-4 because both documents

---

[6] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007), *appeal denied*, 950 A.2d 270 (Pa. 2008).  We may not reweigh the evidence or substitute our own judgment for that of the fact-finder.  *Id.*  "A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review."  *Id.*  "The standard of review regarding the sufficiency of the evidence is whether the evidence admitted before the trial court and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict winner, is sufficient to support all of the elements of the offense."  *Id.*

Our standard of review of a trial court's decision denying a motion for judgment notwithstanding the verdict or, in the alternative, a new trial is to determine whether the trial court committed an error of law or abused its discretion.  *Paxton Hollow Ests., Ltd. v. Lower Paxton Twp.*, 501 A.2d 1175, 1177 n.3 (Pa. Cmwlth. 1985).  Judgment notwithstanding the verdict "will be entered only in a clear case, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper, and any doubts should be resolved in favor of the verdict."  *Posh Constr., Inc. v. Simmons & Greer, Inc.*, 436 A.2d 1192, 1193 (Pa. Super. 1981).  While we

11

constitute inadmissible hearsay. In other words, Appellant contends that both documents are out-of-court statements that were offered into evidence by the Township to prove the truth of the matters set forth therein, and neither document qualifies for the "business records" exception set forth in Pennsylvania Rule of Evidence 803(6)[7] or the "official records" exception set forth in Sections 6103 and 6104 of the Judicial Code.[8] The Township, on the other hand, argues that the

recognize that Pennsylvania Superior Court cases are not binding on this Court, such cases "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[7] Pennsylvania Rule of Evidence 803(6) provides that a record of a regularly conducted business activity is not excluded by the hearsay rule, regardless of whether the declarant is available to testify as a witness, if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification . . . or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

[8] 42 Pa. C.S. §§ 6103, 6104. Section 6103 of the Judicial Code provides, in pertinent part:

> (a) General rule.--An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody.

Section 6104 of the Judicial Code provides:

> (a) General rule.--A copy of a record of governmental action or inaction authenticated as provided in [S]ection 6103 (relating to proof of official records)

12

trial court properly admitted the Leitzell & Economidis audit report into the record over Appellant's hearsay objection pursuant to the business records and official records exceptions to the hearsay rule. The Township also suggests that, even if the trial court admitted the Leitzell & Economidis audit report into the record in error, such error was harmless, because the auditor who prepared the report was a witness at trial and subject to cross-examination. The Township further argues that Exhibit D-4 was properly admitted into evidence under the official records exception to the hearsay rule, because it was prepared in connection with the Commissioners' official duty to terminate Township employees, in this case Appellant. The Township also suggests, however, that Exhibit D-4 does not even constitute hearsay because, when Commissioners Stigale and Higgins adopted the statement at the time of trial, they removed any hearsay problem.[9]

---

shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) Existence of facts.--A copy of a record authenticated as provided in [S]ection 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

[9] Alternatively, the Township contends that Exhibit D-4 is not hearsay because it is a prior consistent statement of Commissioners Stigale and Higgins, both of whom testified at trial and were subject to cross-examination. The Township, however, appears to be confusing the Pennsylvania Rules of Evidence with the Federal Rules of Evidence. Under Federal Rule of Evidence 801(d)(1)(B), a prior out-of-court statement is not hearsay if the declarant testifies and is subject to cross-examination about the prior statement and the prior statement is consistent with the declarant's testimony. While Pennsylvania has incorporated some of the matters set forth in Federal Rule of Evidence 801(d)(1) into Pennsylvania Rule of Evidence 803.1, Pennsylvania has not adopted subsection (d)(1)(B) or any other hearsay rule for prior consistent statements other than for the purposes of rehabilitation or to refresh a witness's recollection. *See* Pa.R.E. 613(c), 803.1(3).

"It is well settled that questions concerning the admission or exclusion of evidence are matters within the trial court's discretion and will not be disturbed on appeal absent a clear indication that its discretion has been abused." *Milan v. Dep't of Transp.*, 620 A.2d 721, 724 (Pa. Cmwlth.), *appeal denied*, 633 A.2d 154 (Pa. 1993). "To constitute reversible error, a ruling on evidence . . . must be shown not only to have been erroneous, but harmful to the complaining party." *Ligon v. Middletown Area Sch. Dist.*, 584 A.2d 376, 382 (Pa. Cmwlth. 1990). Hearsay is an out-of-court statement that a party offers into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Hearsay is admissible if it meets the requirements of a recognized exception established by the Pennsylvania Rules of Evidence, the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. Two recognized exceptions to the hearsay rule are the business records exception set forth in Pennsylvania Rule of Evidence 803(6) and the official records exception set forth in Sections 6103 and 6104 of the Judicial Code. In addition, "an expert report [does not] constitute[] inadmissible hearsay [if] the expert who prepared the report is available for cross-examination regarding the accuracy and reliability of [her] opinion." *Lower Makefield Twp. v. Lands of Dalgewicz*, 4 A.3d 1114, 1122 (Pa. Cmwlth. 2010), *aff'd*, 67 A.3d 772 (Pa. 2013).

Here, there is no question that the Leitzell & Economidis audit report constitutes hearsay. It is an out-of-court statement that the Township offered into evidence to prove, at least in part, the truth of the matter asserted therein—*i.e.*, that during her audit of the Township's financial statements for year ending December 31, 2014, Leitzell identified deficiencies in the Township's financial department that were linked to Appellant and her performance. (*See* R.R. at 386a-95a, 724a-26a.) We agree with Appellant that the audit report does not fall

14

within either the business records or official records exception to the hearsay rule because the Township did not offer the audit report into evidence through the individual/officer who serves as the custodian thereof or offer any testimony to establish that the audit report is an official record or other record maintained by the Township in the course of a regularly conducted business activity. *See* Sections 6103 and 6104 of the Judicial Code; Pa.R.E. 803(6). We cannot, however, agree that the Leitzell & Economidis audit report is inadmissible hearsay because Leitzell, the expert who prepared the audit report, testified at trial and was subject to cross-examination regarding the content thereof.[10] *See Lower Makefield Twp.*, 4 A.3d at 1122. With respect to Exhibit D-4, the memorandum prepared by Commissioner McGinn requesting that the Commissioners take disciplinary action against Appellant, we question whether the Township's counsel performed a proper examination of Commissioners Higgins and Stigale to overcome any hearsay concerns relative to the memorandum.[11] (*See* R.R. at 308a-10a, 440a-41a.) Even if the trial court erred by admitting Exhibit D-4 into the record, however, such error was harmless, because the trial court specifically noted that it did not utilize

---

[10] We note that there was no formal introduction/authentication of the Leitzell & Economidis audit report at the time of Leitzell's testimony; rather, Leitzell simply discussed the report and the opinions contained therein during her testimony. (*See* R.R. at 386a-401a.) While formal introduction/authentication is usually necessary to authenticate and admit a document into the record, in this case, Judge Dozor had made a prior determination on the admissibility of the Leitzell & Economidis audit report when he ruled on Appellant's Motion in Limine, and the trial court accepted Judge Dozor's ruling and admitted the document into the record without further discussion. (*See id.* at 554a.)

[11] Commissioner Higgins testified, without having Exhibit D-4 in front of him, that the Commissioners discussed Exhibit D-4 during executive session and then signed it to show their approval of Commissioner McGinn's recommendations set forth therein. (R.R. at 308a-10a.) Commissioner Stigale, after being presented with Exhibit D-4, testified that Exhibit D-4 was discussed by the Commissioners during executive session and that he was in agreement with the position taken by Commissioner McGinn therein. (*Id.* at 440a-41a.)

Exhibit D-4 to establish the content set forth therein. (*See* Trial Ct. Op. at 6.) For these reasons, we cannot conclude that the trial court committed reversible error by admitting the Leitzell & Economidis audit report and Exhibit D-4 into the record.

### B. Whistleblower Law

Appellant also argues that the trial court erred by finding in favor of the Township and by denying her Post-Trial Motion because: (1) she met her burden of proving that she made numerous good faith reports of instances of wrongdoing and/or waste under the Law; and (2) the Township failed to demonstrate that it terminated her employment for legitimate, non-pretextual reasons. Appellant's argument relative to the trial court's determination that she failed to engage in a protected activity under the Law is two-fold. First, Appellant contends that the trial court applied the wrong legal standard. Appellant suggests that the trial court required her to prove an *actual* instance of wrongdoing or waste by the Township, whereas the Law only required her to prove that she made a good faith report of a *suspected* wrongdoing or waste by the Township. Second, Appellant contends that, even if the trial court applied the correct legal standard, the trial court overlooked the evidence that she presented to establish that she made multiple good faith reports of instances of wrongdoing and/or waste under the Law: (1) the Township's refusal/failure to investigate Payroll Professionals' failure to accurately remit the Township's federal payroll withholdings to the IRS from 2005 to 2009, which Appellant contends is a violation of Section 6672 of the IRC; (2) the Township's failure to reconcile its escrow accounts and the withdrawal of escrow funds without the Commissioners' prior approval, which Appellant contends is a violation of Sections 3921 (theft by unlawful taking or disposition), 3923 (theft by extortion), and 3927 (theft by failure to make required disposition of funds received) of the

Crimes Code[12] and Section 35.325(a)(4) of the Pennsylvania State Real Estate Commission's regulations;[13] (3) the Township's failure to investigate and/or correct an approximately $13,000 irregularity in the Township's property tax reports, which, from the best we can discern, Appellant contends constitutes waste; and (4) the Township's fire marshal's failure to conduct commercial property inspections and/or the Township's misappropriation of the funds generated by the fire marshal's commercial property inspections, which Appellant contends is a violation of Section 12104 of the Third Class City Code[14] and Section 3927 of the Crimes Code.

In response, the Township argues that the trial court applied the correct legal standard and determined that Appellant did not meet the requirements to receive protection under the Law. More specifically, the Township contends that Appellant's questions/complaints regarding the investigation of Payroll Professionals' failure to accurately remit the Township's federal payroll withholdings to the IRS, the irregularity in the Township's property tax reports, the

---

[12] 18 Pa. C.S. §§ 3921, 3923, 3927.

[13] 49 Pa. Code § 35.325(a)(4). Section 35.325(a)(4) of the State Real Estate Commission's regulations provides: "An escrow account shall . . . [b]e used exclusively for escrow purposes." While not relevant to our disposition below, we question how Appellant believes that a regulation applicable to real estate licensees is relevant to the Township's actions with respect to its escrow accounts.

[14] 11 Pa. C.S. § 12104(b)(1). Section 12104(b)(1) of the Third Class City Code provides, in pertinent part:

> The fire marshal . . . shall inspect all construction or buildings within the city or upon property owned or controlled by the city or a municipal authority of the city within this Commonwealth and shall enforce all laws of this Commonwealth and ordinances of the city relating to the construction or buildings, for the prevention, containment or investigation of fire and fire hazards, both as to the construction or buildings and as to their contents or occupancies.

Again, while not relevant to our disposition below, we question how Appellant believes that the Third Class City Code is applicable to the actions of the Township, a first class township.

17

Township's fire marshal's commercial property inspections, and the Township's escrow account "cannot be seen as anything other than reports in the regular course of her employment and not as whistleblower reports." (Township's Br. at 22.) In other words, the Township contends that Appellant failed to establish that her complaints, if made in good faith, would constitute wrongdoing and/or waste.

With respect to the trial court's determination of the cause for her termination, Appellant argues that the Township "utterly failed to meet [its] burden" of proving that she was terminated for separate and legitimate reasons and that the trial court overlooked her ample evidence of pretext and direct retaliation. (Appellant's Br. at 32.) In support thereof, Appellant directs our attention to the Township's alleged statements made in response to her complaints—*i.e.*, "remain silent" and "stop asking questions"—and Granger's alleged actions immediately following her termination—*i.e.*, informing her that she was a "whistleblower." (Appellant's Br. at 32-33.) Appellant contends that the Township's allegations of poor work performance are directly contradicted by such things as the lack of any disciplinary write-ups or poor performance reviews, Granger's consistent praise of her work performance, and Granger's admission that he was satisfied with her work performance at the time of her termination. Appellant further contends that any issues that were uncovered during the Leitzell & Economidis audit were not the result of her poor work performance but, rather, were due to the Township's complex transition in its accounting procedures—from a cash basis to a modified accrual basis—and the death of the consultant that was hired to assist with the implementation of the new accounting software. Appellant also suggests that the Township's decision to terminate her employment approximately six months after the Commissioners were aware of, *inter alia*, the issues uncovered in the Leitzell &

18

Economidis audit report and the Township's failure to follow its personnel policy on termination further demonstrate the pretextual nature of the Township's actions. In response, the Township argues that the trial court properly determined that Appellant was a managerial, non-union employee who was subject to termination by the Commissioners without cause.

The Law protects an employee who makes a good faith report of an instance of wrongdoing or waste from an adverse employment action. Section 3 of the Law.[15] In other words, the Law prohibits an employer from discharging, discriminating against, or retaliating against an employee because such employee makes a good faith report of an instance of wrongdoing or waste. *See id.* The Law, however, "is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of [her] fellow employees." *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013) (quoting *Golaschevsky v. Dep't of Env't Res.*, 683 A.2d 1299, 1304 (Pa. Cmwlth. 1996), *aff'd*, 720 A.2d 757 (Pa. 1998) (*Golaschevsky II*)). An employee alleging a violation of the Law may bring a civil action against her employer and must prove "by a preponderance of the evidence that, prior to the alleged reprisal, [she] . . . reported . . . in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer." Section 4(a)-(b) of the Law.[16] An employee must also "come forward with some evidence of a connection between the report of wrongdoing [and/or waste] and the alleged retaliatory acts." *O'Rourke v. Dep't of Corr.*, 778 A.2d 1194, 1200 (Pa. 2001) (citing *Golaschevsky II*, 720 A.2d at 759). "[T]he mere fact that the discharge occurred a few months after a report of wrongdoing [and/or waste] and

---

[15] 43 P.S. § 1423.

[16] 43 P.S. § 1424(a)-(b).

that the first formal negative actions by the employer occurred after the report are not enough to show a causal connection." *Evans*, 81 A.3d at 1070-71. "The causal connection that the . . . Law requires must be demonstrated 'by concrete facts or surrounding circumstances that the report of wrongdoing or waste led to the [employee's] dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed.'" *Id.* at 1070 (quoting *Golaschevsky II*, 720 A.2d at 759). If an employee proves a causal connection between her report of wrongdoing and/or waste and her termination, the burden shifts to the employer to demonstrate, as a defense, separate and legitimate reasons for the employee's termination that were not merely pretextual. Section 4(c) of the Law; *O'Rourke*, 778 A.2d at 1200.

A "good faith report" is defined as "[a] report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Section 2 of the Law.[17] "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Section 2 of the Law. In order to establish a wrongdoing under the Law, an employee "must demonstrate [that] she made a report of some action by her employer . . . , which, if proven, would constitute a violation of a law or regulation[;] . . . the report must be of an actual violation, not a potential or contemplated violation." *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 434 (Pa. Super. 2018), *appeal denied*, 208 A.3d 462 (Pa. 2019). "Waste" is defined as "[a]n employer's conduct or omissions which result in

---

[17] 43 P.S. § 1422.

substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Section 2 of the Law.

Here, we can certainly see why Appellant is concerned that the trial court applied an incorrect legal standard to determine whether she had engaged in a protected activity under the Law. The trial court specifically found in Findings of Fact Nos. 12 and 18 that Appellant failed to establish any wrongdoing and/or waste by the Township. The Law, however, does not require Appellant to prove that the Township actually engaged in wrongdoing or waste. Rather, the Law requires Appellant to demonstrate that she made a report of some action by the Township, which, if proven, would constitute a violation of a law or regulation or substantial abuse, misuse, destruction, or loss of funds or resources derived from the Commonwealth, and that she had a reasonable basis to believe that the report was true when made. *See* Section 2 of the Law; *Greco*, 199 A.3d at 434. While the trial court attempts to explain in its 1925(a) Opinion that it did not require Appellant to prove wrongdoing and/or waste, the trial court does so by noting that it "discredited [Appellant's] discernment regarding [f]ire [marshal] inspection[s]/fees, escrow withdrawls [sic] and tax payment reconciliations" and that Appellant's complaints, if made, "lacked specificity and were exaggerated and embellished at trial." (Trial Ct. Op. at 11.) This explanation, as well as the trial court's overall analysis in its 1925(a) Opinion, suggest that the trial court did not adjudicate whether Appellant had a reasonable basis to believe that the Township's alleged conduct relative to the Township's federal payroll withholding, escrow accounts, property tax reports, and commercial property fire inspections, if proven, would have constituted wrongdoing and/or waste but, rather, whether the Township actually engaged in the conduct

21

alleged by Appellant. Given these inconsistencies, we cannot discern whether the trial court applied the correct legal standard to determine whether Appellant engaged in a protected activity under the Law.

Our analysis, however, cannot stop there, because, even if we were to assume that Appellant established that she made a good faith report of wrongdoing and/or waste under the Law, Appellant was still required to prove a causal connection between her good faith report and her termination or, alternatively, the Township, in defense, could have demonstrated that it had separate and legitimate reasons to terminate Appellant's employment that were not merely pretextual. *See O'Rourke*, 778 A.2d at 1200. By challenging the trial court's findings with respect to the cause of her termination, Appellant is essentially asking this Court to reweigh the evidence and substitute our judgment on the witnesses' credibility for that of the trial court, which we will not do as long as the trial court's findings relative to Appellant's termination are supported by substantial evidence. *See Swift*, 937 A.2d at 1167 n.5.

Granger testified that, while he did not recommend Appellant's termination and was not involved in the decision to terminate her employment, he also did not inform Appellant that she was a whistleblower or that she had a good whistleblower case. (R.R. at 646a, 650a.) He further testified that he had counseled Appellant on her interpersonal skills prior to her termination. (*Id.* at 648a.) Commissioner Higgins testified that he observed Appellant's interactions with other Township employees and found Appellant to be "belligerent, vindictive[,] and condescending." (*Id.* at 290a.) He also testified that, beginning in March or April 2015, at least three Township employees, including Schmidt, made complaints to him about Appellant's attitude and how Appellant was treating other Township employees. (*Id.* at 290a-91a.) Commissioner Higgins indicated that he discussed these

22

complaints with Granger and requested that Granger counsel Appellant on how she interacted with Township employees, but he saw no change in Appellant's behavior thereafter. (*Id.* at 291a-93a.) He further testified that the Commissioners ultimately made the decision to terminate Appellant's employment because she had not performed to the standards expected of her, she continued to be belligerent with Township employees despite counseling, and she had overstepped the bounds of her position as finance director; he denied that Appellant's termination was in any way related to her reports/questions relative to Payroll Professionals and the Township's payroll withholdings, the Township's property tax reports, the Township's escrow accounts, or the Township's fire marshal's commercial property inspections. (*Id.* at 295a-328a.) Commissioner Stigale testified similarly regarding his observations of Appellant's interactions with Township employees, complaints that he received from Township employees, and the reasons for Appellant's termination. (*Id.* at 435a-36a, 444a-52a, 462a-65a, 472a, 474a-75a.)

All of this evidence, when viewed in the light most favorable to the Township, is sufficient to support the trial court's finding that the Township terminated Appellant's employment for legitimate reasons that were separate from any report of wrongdoing and/or waste and that were not merely pretextual. *See Swift*, 937 A.2d at 1167 n.5. As a result, we cannot conclude that the trial court erred by finding in favor of the Township or by denying Appellant's Post-Trial Motion.

### IV. CONCLUSION

Based on the foregoing, we conclude that the trial court did not commit reversible error by admitting the Leitzell & Economidis audit report and Exhibit D-4 into the evidentiary record. We also conclude that the trial court did not commit an

error of law by finding in favor of the Township and against Appellant or by denying Appellant's Post-Trial Motion. Accordingly, we affirm the trial court's order.

_____
P. KEVIN BROBSON, President Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy W. Bjorhus,                 :  
           Appellant     :  
                           :  
          v.                 :   No. 977 C.D. 2020  
                           :  
Aston Township           :

# **O R D E R**

AND NOW, this 3rd day of August, 2021, the order of the Court of Common Pleas of Delaware County, dated June 22, 2020, is hereby AFFIRMED.

<br>

                                                          _____

                                                   P. KEVIN BROBSON, President Judge